UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA L. COFFMAN,                                  Case No. 14-13801

          Plaintiff,                       Victoria A. Roberts
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Michael Hluchaniuk
                                                 United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 16, 17)**

## I.     PROCEDURAL HISTORY

    A.     Proceedings in this Court

On October 2, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Victoria A. Roberts referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkts. 16, 17).  The cross-motions are now ready for report and recommendation.

    B.     Administrative Proceedings

Plaintiff filed the instant claim for a period of disability and disability

insurance benefits on July 11, 2011.   On July 5, 2011, plaintiff filed an
application for supplemental security income benefits.  In both applications,
plaintiff alleged a disability beginning May 10, 2010.  The Commissioner initially
denied plaintiff's applications on March 9, 2012.  (Tr. 44-45).  Thereafter, plaintiff
requested an administrative hearing, and on December 6, 2012, she appeared with
counsel before Administrative Law Judge ("ALJ") Scott M. Staller, who
considered her case de novo.  (Tr. 26-43).  In a March 11, 2013 decision, the ALJ
determined that plaintiff was not disabled within the meaning of the Social
Security Act.  (Tr. 14-20).  The ALJ's decision became the final decision of the
Commissioner on May 29, 2014, when the Social Security Administration's
Appeals Council denied plaintiff's request for review.  (Tr. 4-8).  Plaintiff filed
this suit on October 2, 2014.  (Dkt. 1).

For the reasons set forth below, the undersigned concludes that substantial
evidence does not support the residual functional capacity (RFC) assessment and a
remand is necessary for the ALJ to reconsider plaintiff's testimony and the
medical evidence.  The Court therefore **RECOMMENDS** that Plaintiff's Motion
for Summary Judgment (Dkt. 11) be **GRANTED**, that Defendant's Motion for
Summary Judgment (Dkt. 13) be **DENIED**, and that, pursuant to 42 U.S.C.
§ 405(g), the decision of the Commissioner of Social Security be **REVERSED**
and **REMANDED** for proceedings consistent with this Report and

2

Recommendation.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff has past relevant work as a pharmacy technician.  (Tr. 19-20).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in any substantial gainful activity since May 10, 2010 (the alleged onset date).  (Tr. 16).  At step two, the ALJ found that plaintiff had the following severe impairments: osteoarthritis, cervical disc herniation, migraines, and a brain aneurysm (20 CFR 404.1520(c) and 416.920(c)).  (*Id.*)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (Tr. 17).

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant must avoid concentrated exposure to dangerous moving machinery and unprotected heights.

(Tr. 17).  At step four, the ALJ determined that plaintiff was capable of performing her past relevant work as a pharmacy technician, but does not require plaintiff to perform work-related activities precluded by the RFC.  (Tr. 19).  As such, the ALJ concluded that plaintiff had not been under a disability from May 10, 2010

through the date of his decision.  (Tr. 20).

      B.    <u>Plaintiff's Claims of Error</u>

           1.    The ALJ impermissibly ignored evidence of plaintiff's
               limitations

Plaintiff argues that the ALJ impermissibly ignored evidence of her

migraine headaches that led to a flawed RFC.  Plaintiff claims that the ALJ

summarized her extensive history of migraine headaches in one paragraph.  (Tr.

18).  Specifically, plaintiff complains that the ALJ failed to mention any of the

long-standing treatment that she received from her primary care physician, pain

medicine physician, and neurologist to treat her migraine headaches.  Plaintiff

outlines the following medical history regarding her brain aneurysm and migraine

headaches:

> On May 10, 2010, Plaintiff presented to Mercy
> Hospital's Emergency Department reporting symptoms
> of an altered mental state, including difficulty speaking,
> responding inappropriately, generalized weakness,
> malaise, and bilateral facial numbness. (R. 191). She also
> reported experiencing severe headaches ("HAs") prior to
> these symptoms. *Id.* Upon neurological examination,
> Plaintiff had mild difficulty with speech. (R. 195). Her
> symptoms started to improve while in the emergency
> room, however, she was admitted to the hospital due to
> her clinical presentation and continuing HAs. (R. 191,
> 195).
>
> An MRI of the brain revealed questions of aneurysm
> along the distal right internal carotid artery. (R. 192,
> 225). An MRA of the brain showed a two-millimeter

saccular aneurysm arising from the proximal right internal carotid artery and a six-millimeter saccular aneurysm arising from the medial aspect of the proximal right supraclinoid internal carotid artery. (R. 192, 226). Plaintiff's HAs persisted during her hospitalization and [she] reported that she often sees wavy lines of light in vision with her migraines HAs. (R. 210, 212). On May 15, after several consults, Plaintiff was transferred to tertiary care at Henry Ford Hospital. (R. 192, 197, 200, 204, 206).

Plaintiff arrived at the Henry Ford Hospital and was sent for vascular, neurological, and neurosurgery consults. (R. 257, 252). Neurologist Richard Salazar, M.D. opined that Plaintiff's clinical scenario meets the criteria for complicated migraines and instructed her to follow-up with a neurologist for migraine management. (R. 256). At a subsequent consultation with neurosurgeon Donald Seyfried, M.D., Dr. Seyfried determined that Plaintiff required endovascular treatment of the right carotid aneurysm. (R. 265). On May 18, Plaintiff underwent a successful endovascular coiling and [segment] of the clinoidal aneurysm. (R. 281-282). She was discharged the next day in good condition. (R. 234).

From June 2010 to December 2012, Plaintiff received treatment for migraine HAs from her primary care physician ("PCP") Danilo A. Dona, M.D. (R. 290, 292, 295-296, 298, 301, 303, 305, 307, 310, 313, 315-318, 485, 560, 570, 574, 580). Dr. Dona prescribed Vicodin for Plaintiff's migraine HAs and later switched her to Lorcet. *Id.* Plaintiff reported that her HAs occurred in a persistent pattern with increasing severity occurring any time of the day. (R. 562). She also had associated symptoms, including anxiety, blurring vision, flashing light, insomnia, migraines, and stress. *Id.*

From April 2011 to December 2012, Plaintiff was also under the care of pain medicine specialist Lesly Pompy,

M.D. at Interventional Pain Management. (R. 362-386, 403-423, 426-440, 541, 644). Plaintiff reported continuous pain that was exacerbated by coughing, movement, bending her head, bright light, and noise. *Id.* She indicated that lying down, dark quiet places, medication, and rest improved her symptoms. *Id.* On examination she exhibited occipital tenderness, right suboccipital tenderness, and palpation of the great and lesser occipital nerve on the right was abnormal. (R. 371, 408). Plaintiff also reported experiencing numbness and tingling, and exhibited decreased sensation to sharp and dull touch of her hands. (R. 382-383, 426-428). Dr. Pompy gave a guarded prognosis explaining that Plaintiff was at high risk of suffering permanent damages. (R. 373). He also noted that the possibility of future or persistent neurological deficit is likely. (R. 440). Dr. Pompy prescribed Lorcet, Neurontin, and Topamax for treatment of Plaintiff's migraines. (R. 384, 387). The treatment notes also reflect that Plaintiff was scheduled for a sphenopalatine block and intravenous ketamine procedure in early 2013. (R. 544).

From November 2011 to November 2012, Plaintiff presented to the Mercy Hospital's Emergency Department on seven separate occasions for treatment of migraine HAs. (R. 471, 480, 488, 491, 509, 533). During one of these encounters, Plaintiff was admitted for inpatient hospitalization through the emergency department when she reported experiencing right side facial droop, HAs, and weakness for the past few days. (R. 475-480). Upon neurological examination, Dr. Dona noted that Plaintiff's coordination had a drop with alternating movement and her finger-to-nose coordination was slow without ataxia. (R. 640). The next day, Plaintiff presented to neurologist Ted Barber, M.D. reporting that she was limited in the migraine medications she could take due to her history of aneurysms. (R. 637). She also added that the medications she tried have not been particularly effective, including

6

> Aricept, Depakote, and Topamax. *Id.* Dr. Barber advised
> Plaintiff to try steroids to see how it would break up her
> HAs. (R. 638).
>
> Lastly, from December 2011 to November 2012,
> Plaintiff was treated by neurologist Ram Garg, M.D. for
> migraine HAs. (R. 444-469). She reported severe
> frequent HAs described consistent with the above
> exacerbations and associated symptoms. *Id. See supra* p.
> 4-5.

(Dkt. 16, Pl's Mot., at 2-6).

Ultimately, plaintiff contends that the ALJ ignored the above treatment of

plaintiff's migraine headaches with the accompanying "guarded" prognosis and

concludes that the medical evidence is "normal."  Similarly, plaintiff argues that

the ALJ erred by minimizing the emergency care visits that she received for her

migraines.  Plaintiff is troubled that the ALJ downplayed seven visits to the

emergency room for treatment of her migraine headaches over a period of one-

year, which included one inpatient admission.  (Tr. 471, 480, 488, 491, 509, 533).

The ALJ also fails to mention that plaintiff was not released pain-free, but was

given prescriptions for Morphine and Dilaudid before discharge.  (*Id.*)  Plaintiff

also points out that the ALJ wholly ignored the evidence of her ongoing treatment

of chronic sinusitis, recurring bronchitis, and anxiety in his decision.  Plaintiff

claims that these impairments would likely result in functional limitations in her

ability to work, particularly because plaintiff reported that these impairments

exacerbated her migraines. (Tr. 301, 414, 409, 440, 541, 562). Therefore, the combination of these overlooked impairments with plaintiff's migraine headaches would likely cause her to be absent from work more than two days per month which the vocational expert testified would be job preclusive. (Tr. 42).

       2.     The ALJ erroneously discounted plaintiff's credibility

Plaintiff contends that the ALJ failed to properly consider the factors listed in SSR 96-7p and 20 C.F.R. § 404.1529(c)(3) when assessing her credibility. Additionally, plaintiff indicates that where the ALJ did point out inconsistencies in the record, those inconsistencies were based on numerous mischaracterizations of the record. For example, the ALJ questioned plaintiff's claim of extreme functional limitations based on his review of the longitudinal medical record. Plaintiff on the other hand, and as discussed above, indicates that the ALJ ignored evidence by drawing this conclusion. Indeed, plaintiff's testimony is wholly consistent with the medical evidence. For instance, plaintiff testified that she lies down for extended periods throughout the day. (Tr. 36, 38). Plaintiff avers that this is consistent with her reports to Dr. Pompy that lying down makes her head pain better. (Tr. 440, 541). Additionally, plaintiff testified that she told her doctors that she did not obtain relief from her medications. (Tr. 40). This is consistent with Dr. Barber's treatment records, which note that plaintiff reported that none of her prescribed medications had been particularly effective, including

Aricept, Depakote, and Topamax.  (Tr. 637).  Plaintiff also claims that her testimony of pain is supported by the fact that she has been treated with various pain, migraine, and nerve medications.

The ALJ also discounted plaintiff's claims of extreme limitations because he states that she "is able to attend to her personal care needs, watch TV, perform household duties, prepare meals, go outside, and go shopping."  (Tr. 19).  Plaintiff, though, claims that these activities are minimal and are not comparable to work activities, nor does the ALJ identify anywhere in the record that shows that plaintiff is able to perform more than she testified to at the hearing.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) (holding that "somewhat minimal daily functions are not comparable to typical work activities.").

Plaintiff also argues that the ALJ employs an erroneous standard when assessing plaintiff's ability to work.  The ALJ reasons that because plaintiff worked after her alleged onset date for approximately 20 hours per week, this suggests that she is not currently precluded from work.  (Tr. 19).  However, SSR 96-8p states that the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Plaintiff testified that she works only three and one-half hours per day and she is allowed to take a 30-minute break

during her shift.  (Tr. 32).  Also, plaintiff explained that when she experiences migraines, she is able to take 10 to 15 minute breaks, as needed.  (*Id*.)  For these reasons, plaintiff argues that the record does not support her ability to work on a regular and continuous basis.

The ALJ also discounted plaintiff's credibility because he determined that her allegations of pain were not credible in light of the medical evidence.  (Tr. 19).  Plaintiff claims that the medical evidence shows that she was receiving ongoing treatment for PCP and two physicians specializing in treating migraine headaches and who deemed her prognosis "guarded" never questioned plaintiff's complaints of pain.  Also, contrary to the ALJ's conclusion that plaintiff's condition has "stabilized," plaintiff contends that the records showed that she was scheduled for a sphenopalatine block and intravenous ketamine procedure in early 2013.  Both of these procedures, contend plaintiff, denote more than conservative treatment.  For these reasons, plaintiff contends that the ALJ's credibility finding is erroneous, and the accompanying RFC is not supported.  The VE testified that if an individual is off-task for more than 20 percent of an eight-hour work day, there would be no jobs available.  (Tr. 41).  Thus, taking all of plaintiff's limitations in combination, plaintiff would likely be off-task for more than 20 percent of the workday, thus precluding her ability to sustain full time work.

3.    The ALJ erred in adopting an incomplete RFC

Plaintiff argues that the RFC finding is inadequate because the ALJ failed to properly take into account plaintiff's migraine headaches and neck pain. The RFC limited plaintiff to light work with avoidance of concentrated exposure to dangerous moving machinery and unprotected heights. (Tr. 17). Plaintiff claims that this is insufficient and does not reflect the most plaintiff can do despite her limitations. While the ALJ finds plaintiff's migraines a "severe impairment," he fails to adopt any limitations that accommodate her pain or sensitivity to environmental conditions. For example, plaintiff reported light and noise sensitivity, however, the ALJ failed to include those as limitations in the RFC. (*See e.g.*, Tr. 381, 386, 414, 426, 437, 440, 541).

Plaintiff also contends that her migraines would have an adverse effect on her concentration, persistence, or pace. Plaintiff reported throughout the record that stress is not only a symptom of her HAs, but also exacerbates them. (Tr. 301, 432, 562). Additionally, plaintiff reported that she experiences anxiety, which she notes is associated with her HAs. (*See e.g.*, Tr. 204, 252, 258, 290, 294, 301, 305, 370, 386, 403, 409, 414, 430, 432, 438, 440, 467, 562). During the relevant time, various providers prescribed plaintiff Xanax, she alleged a history of panic disorder, and she indicated that her panic attacks affected her ability to work. (Tr. 46, 197, 251, 297, 310, 562, 574). Despite this, the ALJ does not discuss the severity or limitations caused by plaintiff's anxiety, nor does he include any non-

11

exertional limitations, which plaintiff claims are supported by the evidence.

    4.    The ALJ made an error at Step Four

Plaintiff also argues that the ALJ erred at Step Four when he determined that she could return to work as a pharmacy technician. Plaintiff claims that the ALJ's erroneous credibility determination and adoption of an improper RFC led to an improper Step Four determination. Plaintiff claims that the record, including seven visits to the emergency room within the span of one year, does not support a finding that plaintiff could even perform unskilled work. Although the record does not contain the particular duties that plaintiff performed as a pharmacy technician, the VE testified that plaintiff's past relevant work was consistent with DOT #074.382.010. (Tr. 20). Plaintiff claims, however, that the record does not support that she would be able to perform the duties associated with this DOT code. In fact, plaintiff claims that her significant deficiencies in concentration, persistence, or pace would make it difficult for her to perform even an unskilled job. Plaintiff argues that this is evidenced by her ability to only sustain 20 hours per week employment with considerable accommodations in an unskilled job. (Tr. 32). Plaintiff claims that the ALJ failed to make a function-by-function assessment, which led him to overlook plaintiff's exertional limitations, non-exertional limitations, and additional environmental limitations. As such, the ALJ erred in determining that plaintiff was capable of returning to work as a pharmacy

technician as generally performed in the national economy.  Plaintiff further

contends that she would not be able to return to work in an unskilled capacity.

Accordingly, plaintiff argues that a remand is required to reassess the ALJ's Step

Four conclusions.

    C.    <u>Commissioner's Motion for Summary Judgment</u>

        1.    Substantial evidence supports the ALJ's assessment of
               plaintiff's impairments.

The ALJ acknowledged plaintiff's migraine headaches, emergency room

visits, and treatment, however, he also concluded that physical and diagnostic

testing was normal.  (Tr. 18, 256).  The ALJ also noted that plaintiff's condition

had improved over time and that her physicians had recommended conservative

treatments.  (Tr. 18-19, 542, 544, 638).  For these reasons, the ALJ concluded that

the medical records, plaintiff's daily activities, and her part-time work suggested

that her allegations of her inability to work were not entirely credible.  The

Commissioner argues that substantial evidence supports this assessment.

The Commissioner argues that the record reflects the normal findings the

ALJ observed, specifically a normal electroencephalogram  (Tr. 48, 192), and a

normal CT of plaintiff's brain.  (Tr. 192).  Further, despite an MRI and MRA

showing two aneurysms (Tr. 192), the Commissioner argues that the ALJ

reasonably noted that plaintiff remained neurologically intact during her 2010

hospital stay.  (Tr. 235).  Also, the record reflects that, although plaintiff continued to complain of headaches, she only received treatment with medication.  (Tr. 541, 544, 561, 563, 597, 599, 607, 611, 638).

The Commissioner also argues that plaintiff's seven trips to the emergency room in two and one-half years and prescriptions for narcotics during those trips does not necessarily indicate disabling headaches.  *Cf. Beatty v. Commissioner of Social Sec.*, No 1:11-cv-58, 2011 EL 6750085, at * 9 (S.D. Ohio Nov. 21, 2011) (observing that Plaintiff's four trips to emergency rooms over three years with complaints of headaches did not support a finding of daily intractable migraine headaches where her pain was successfully treated with medication, including Dilaudid).  The ALJ, in fact, considered her emergency room visits, noting that her physical and diagnostic tests were normal during these visits and that she was discharged home.  (Tr. 18 (citing Ex. 1F-4F, 7F-13F)).  The Commissioner also claims that plaintiff provides no support for her argument that a "guarded prognosis" establishes the severity of her condition.

The Commissioner also contends that the ALJ did not err in assessing plaintiff's credibility.  Plaintiff objects that her statements were entirely consistent as she repeatedly stated that she needed to lie down during the day and that she did not obtain relief from medications.  The Commissioner points out that while the record shows that plaintiff found relief from her headaches from lying down, one

14

report shows that she received relief from medication and that her physicians only recommended conservative treatment. (Tr. 18, 541, 544, 637). The Commissioner argues that plaintiff's argument that she is scheduled for a sphenopalative block and intravenous ketamine procedure is unsupported and should not be considered.

The Commissioner also contends that the ALJ reasonably considered plaintiff's daily activities, including working, dressing herself, vacuuming, getting her son off the bus, helping him with homework, cooking dinner, and grocery shopping as supporting an adverse credibility finding. (Tr. 17, 36-37); The ALJ reasonably considered her capacity for household tasks and self-care. *See* 20 C.F.R. § 404.1529(c)(3)(i) (authorizing an ALJ to consider activities when evaluating pain and functional limitations); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (permitting an ALJ to consider daily activities such as housework and social activities in evaluating complaints of disabling pain).

The Commissioner also contends that the ALJ rightly considered plaintiff's part-time work when he evaluated whether she could sustain full-time competitive employment. *Cf. Miller v. Comm'r of Soc. Sec.*, No. 12-3644, 2013 WL 1705026, at *2 (6th Cir. Apr. 22, 2013) ("Further, the ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.").

The Commissioner also argues that plaintiff failed to present any evidence

15

of a deficit in concentration, persistence or pace, and to the contrary, the record shows that plaintiff had normal mental status examinations, (Tr. 473, 478, 483, 489, 492, 510, 522, 532, 534, 544, 546, 548, 560, 562, 570, 574, 579, 645), nor did plaintiff have any treatment from a mental health professional in the record.

Further, plaintiff argues that the ALJ failed to account for her anxiety and panic attacks, and ignored her treatment for chronic sinusitis and recurring bronchitis.   Plaintiff speculates that these conditions would result in functional limitations, as they exacerbate her headaches.   But, as the Commissioner notes above, despite plaintiff's headaches, she was able to perform a wide-range of activities.   And, in fact, plaintiff repeatedly denied having anxiety.   (Tr. 472, 476, 477, 481, 541).   The Commissioner contends that when, and if, these conditions did exist, they were associated with, and not discrete from, her headaches.   Indeed, plaintiff does not highlight any record evidence demonstrating that her anxiety and panic attacks resulted in independent functional limitations.   As such, the Commissioner argues that the ALJ did not err in electing to ignore these conditions as severe impairments.   *Cf. Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("[E]ven if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of Nejat's impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless.").

16

Also, Plaintiff's sinusitis, which she argues continued to bother her after the surgery, appears to have been limited to a couple of months and was related to a cold. (Tr. 291, 292, 293, 295).  Indeed, although plaintiff complained of allergic rhinitis and sinus pain in April and May 2011, reviews of her sinuses were otherwise normal after her surgery.  (Tr. 290, 292, 294, 296, 579).  Plaintiff's bronchitis, while recurrent in the form of a persistent cough, did not otherwise consistently affect her respiratory system or breath sounds.  (Tr. 305, 307, 485, 546, 579, 582, 648).  Plaintiff also appears to argue that her cough led to her headaches, but does not explain how this would change the ALJ's analysis of her ability to function with headaches.  Based on the above, the Commissioner argues that plaintiff demonstrates no error in the ALJ's election to overlook her sinusitis and bronchitis as independent impairments.

> 2.      Substantial evidence supports the ALJ's assessment of plaintiff's RFC and determination that she could return to her past work.

The Commissioner argues that plaintiff presented no evidence of a mental limitation that would limit her ability to her to less-skilled work than she had previously performed.  Plaintiff claims that she is light, sound and movement sensitive, however, the Commissioner argues that plaintiff failed to present evidence that the pharmacy technician position would require intolerable environmental stressors.  Moreover, the Commissioner contends that the DOT

states that the noise intensity level is "quiet" and does not mention any other

environmental factors. DOT § 074.382-010. Further, plaintiff has stated that even

when light exacerbated her pain, she was able to continue working. (Tr. 414).

Finally, although plaintiff contends that she would not be able to work a full-time

competitive work schedule, the Commissioner argues that the ALJ reasonably

discredited this allegation. As such, the Commissioner argues that plaintiff

establishes no error in the ALJ's conclusion that she can return to her prior work

as a pharmacy technician and this court should affirm it.

     D.    <u>Plaintiff's Reply</u>

     Plaintiff contends that the Commissioner misstates the record regarding the

severity of her headaches. In fact, plaintiff had seven emergency room visits not

over the course of "two and one half years," but over the course of one year. (Tr.

471, 480, 488, 491, 509, 533). Plaintiff also contends that the longitudinal record

of her migraine headaches and subsequent treatment is distinguishable from the

*Beatty* case cited by the Commissioner. In *Beatty*, plaintiff had four trips to the

ER over the span of three years. Moreover, the *Beatty* court based its ruling on

other evidence including, that on discharge from the ER, plaintiff was "pain free";

that medication resolved plaintiff's headaches; and that plaintiff failed to continue

treatment with her neurologist. Here, plaintiff argues that she went to the ER

seven times in one year, received ongoing treatment from her neurologist and pain

18

specialist, and also reported that she did not receive relief from medications.

Moreover, plaintiff claims that the ALJ is "playing doctor" by concluding that her test results were "normal" and by overlooking her clinoidal aneurysm. Plaintiff notes that her primary care physician, pain medicine physician, and neurologist did not doubt the existence or severity of her migraine headaches and continued to prescribe medications and combinations of medications in an attempt to relieve her symptoms. Regarding the severity of her symptoms, plaintiff again points to a scheduled sphenopalatine block and intravenous ketamine procedure.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions

20

among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

22

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

24

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    The RFC Determination

Plaintiff's main argument is that the ALJ impermissibly ignored relevant evidence of her migraine headaches that led to an improper RFC assessment.  With respect to plaintiff's migraine headaches, the ALJ noted:

> Tuning to the medical evidence, the claimant has issues with headaches on a regular basis. Treatment notes indicate that she was complaining of loss of speech and weakness due to her headaches. However, the claimant's speech was much improved at discharge. Furthermore, a computed tomography (CT) scan of the head showed no intracranial hemorrhage, edema, skull fracture or other acute pathology and was otherwise unremarkable. In addition, her physicians noted that she might have episodes with headaches and a saccular intracerebral aneurysm was seen as well. Another (CT) scan of the brain did show brain aneurysms, in which she had one coiled and since has suffered from migraines. Furthermore, she did take medication for her pain symptoms, but she indicated minimal relief from her pain symptoms. Moreover, physical examinations showed that the neurological system was within normal limits

25

> through the period of disability. In June 2011, a magnetic resonance image (MRI) and a magnetic resonance angiography (MRA) of the brain revealed normal results despite consistent complaints of headaches. Her doctors consistently recommended medication and exercise as treatment for her symptoms. In 2012, she did present herself to the emergency department with complaints of migraines, yet physical and diagnostic testing were normal and she was discharged home (Ex. 1F-4F, 7F-13F).

(Tr. 18).

The Commissioner asserts that the ALJ's findings are consistent with the medical record and are supported by substantial evidence. The undersigned tends to agree with plaintiff that the medical record was not fully considered and that substantial evidence does not support the RFC in this case. Entwined with the RFC determination here was the ALJ's decision to discount plaintiff's credibility regarding her physical limitations. The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1983). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that, whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

26

objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." *Id.* Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See e.g.*, *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues, *see Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987), and the court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Rather, the court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed...." *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. Appx. 943, 945 (6th Cir. 2005). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005). "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey*, 987 F.2d at 1234; *see White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009). However, credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *See Walters*, 127 F.3d at 531.

Plaintiff contends that the ALJ's analysis was not supported by substantial

evidence.  Plaintiff specifically argues that the ALJ seemingly ignored her "longitudinal medical evidence" of migraine headaches, which led to an inaccurate RFC finding.  Most significantly, plaintiff complains that the ALJ ignored evidence of her brain aneurysm and migraine headaches.  Indeed, an MRI of plaintiff's brain showed two aneurysms along the internal carotid artery.  (Tr. 192, 225).  Neurologist Dr. Richard Salazar opined that plaintiff met the criteria for complicated migraines and instructed her to follow-up with a neurologist for migraine management.  (Tr. 256).  Plaintiff subsequently underwent a successful endovascular coiling of the clinoidal aneurysm. (Tr. 281-282).

Plaintiff also contends that the ALJ impermissibly discounted testimony that she lies down for extended periods throughout the day (Tr. 36, 38) which was supported by her reports to pain medicine specialist, Dr. Lesly Pompy, that lying down makes her head pain better.  (Tr. 440, 541).  Dr. Pompy noted that plaintiff's prognosis was "guarded" indicating that she was likely to suffer from complications, or have a slow response to care and would have a need for more treatment than other patients.  (Tr. 433).  Dr. Pompy also noted a "likely" possibility of future or persistent neurological deficit.  (Tr. 440).

The ALJ also discounted plaintiff's claims that medications were not effective.  However, plaintiff told her doctors that she did not receive relief from medications (Tr. 40, 637) and the record is replete with examples from physicians

who prescribed pain medications and combinations of medications over the course of plaintiff's treatment.  Also, from November 2011 until November 2012, plaintiff presented to the emergency room a total of seven times for migraine headaches.  (Tr. 471, 480, 488, 491, 509, 533).  In addition, from June 2010 until December 2012, plaintiff received continuous treatment for migraine headaches from her primary care physician, Dr. Danilo A. Dona.  (Tr. 290, 292, 295-96, 298, 301, 305, 307, 310, 313, 315-18, 485, 560, 574, 580).  Plaintiff was additionally scheduled for a sphenopalative block and intravenous ketamine procedure in early 2013.  (Tr. 544).

Plaintiff also documents the severity of her migraines and the adverse impact they have on her concentration, persistence or pace.  The ALJ failed to address these mental limitations at all in the RFC.  The record notes that stress is not only a symptom of her migraines, but also exacerbates them.  (Tr. 301, 432, 562).  Further, plaintiff notes that anxiety is also associated with her migraines. (Tr. 204, 252, 258, 290, 294, 301, 305, 370, 386, 403, 409, 414, 430, 432, 440, 467, 562).  Moreover, plaintiff indicated that she had a history of panic attacks that affected her ability to work and that she had a history of panic disorder.  (Tr. 46, 197).  Again, the ALJ does not discuss the severity or limitations caused by plaintiff's anxiety or panic disorder.

This court is aware of the relevant Social Security regulations that

29

"statements about [a claimant's] pain or other symptoms will not alone establish
that [she is] disabled."  20 C.F.R. §§ 404.1529(a), 416.929.  Instead, the Sixth
Circuit has repeatedly held that "subjective complaints may support a finding of
disability only where objective medical evidence confirms the severity of the
alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794,
801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir.
1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology,
the ALJ, may distrust a claimant's allegations ... if the subjective allegations, the
ALJ's personal observations, and the objective medical evidence contradict each
other.").  The undersigned believes that plaintiff has provided sufficient objective
medical evidence to confirm that substantial evidence does not support the RFC as
it currently stands.  This is error.

       2.    Credibility & Step 4 Determination

Because the undersigned has concluded that a remand is necessary for the
ALJ to reconsider plaintiff's RFC determination, the ALJ will necessarily need to
re-weigh the evidence against plaintiff's testimony.  As such, the court will not
examine the ALJ's credibility findings now.  Similarly, on remand, the ALJ will
need to re-formulate his hypothetical questions to the vocational expert to be in
harmony with the new RFC.  As such, the court will not opine now on whether the
ALJ erred at Step Four.

## IV.   RECOMMENDATION

The undersigned concludes that substantial evidence does not support the RFC assessment and a remand is necessary for the ALJ to consider plaintiff's testimony and the medical evidence.  As such, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 16) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 17) be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be **REVERSED** and **REMANDED** for proceedings in accordance with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

31

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 20, 2015          s/Michael Hluchaniuk
                                 Michael Hluchaniuk
                                 United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 20, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                 s/Tammy Hallwood
                                 Case Manager
                                 (810) 341-7887
                                 tammy_hallwood@mied.uscourts.gov

32